RUFUS B. STICKNEY & another *vs.* BENJAMIN F. ALLEN.

A mechanic who has agreed to repair and alter stereotype plates, in consideration of being allowed to do the owner's printing for an indefinite time, has no lien on the plates on account of repairs and alterations, when, after several years, the owner withdraws the printing from him.

A lien for work done on chattels is lost by voluntarily surrendering the possession of them to the owner or his agent.

An owner of stereotype plates in the possession of a mechanic who refuses to give them up, except on payment of a bill due for printing, and also of a bill for repairs on the plates, which is not due, is not bound to tender payment of the bill already due if he is ready to pay it on the delivery to him of the plates.

The measure of damages against a wrongdoer for the conversion of plates for printing labels or advertisements, of great value to the owner, but of very trifling value to others, is the value to him; and in estimating this the cost of replacing the plates may be considered.

In an action for the conversion of chattels to the defendant's use, the measure of damages is not affected by the defendant's having, after the conversion, attached them on mesne process against the plaintiff, and then discontinued that action and offered to restore them to the plaintiff, who refused to receive them.

ACTION OF TORT for converting to the defendant's use stereotype plates, the property of the plaintiffs. The declaration alleged no special damage.

The answer denied the plaintiffs' allegations; and alleged, 1st. That the defendant had a lien on the property ; 2d. That the property had been attached on a writ in favor of the defendant against the plaintiff, and, on the discontinuance of that action, restored by the attaching officer at the defendant's direction to the plaintiff.

Stickney & another *v.* Allen.

At the trial in the superior court of Suffolk at September term 1856, before *Nelson*, C. J., the following facts were in evidence :

In 1849 the defendant, an engraver, occupied the same place of business with one Carlton, a printer, who did the plaintiffs' printing under a contract to keep the plaintiffs' plates in order, in consideration of having their printing at certain rates. In the same year the defendant made alterations on some of the plates, and manufactured others for the plaintiffs. The new plates were paid for as the bills for them were presented, but some of the alterations were not paid for ; and the plates, new and altered, went into Carlton's hands, as the property of the plaintiffs, to print from. In 1852 Carlton died, and the defendant went into the printing business, and made a cont. act with the plaintiffs, under which he did their printing till July 1855, when the plaintiffs notified him that they should have their printing done elsewhere; and repeatedly demanded of him their plates, which he refused to give up, unless first paid for the printing and the alterations and repairs.

Before this refusal, the defendant having sent to the plaintiffs his bill for printing, in which was no charge for any alterations or repairs, one of the plaintiffs came with it to the defendant, with money sufficient to pay it, as rendered ; the defendant then made a claim for repairs ; the plaintiffs offered to pay the bill for printing as rendered, and demanded the plates; but the defendant refused to give them up unless his claim for repairs was also paid, and gave no other reason for not taking the money offered. The plaintiffs would not have paid any money unless they got the plates, but were ready to pay the amount of the bill for printing if they got them.

The defendant requested the court to rule, that if the privilege of having the plaintiffs' printing was a consideration for making the alterations and repairs, yet the plaintiffs, having taken away the former, were bound to pay for the latter. But the court instructed the jury that if in consideration of the printing the defendant had agreed to make the alterations without charge ; and the contract, for the continuance of which no time had been fixed, had yet continued and been carried out for several

30 *

years, and then been given up; the defendant would have no
lien on the plates on account of the alterations; and the jury
might presume that the continuance of the contract had remu-
nerated the defendant for the alterations, if any remuneration
was needed.

The plaintiffs contended that the defendant, by delivering the
plates to Carlton and allowing him to use them, had relin-
quished the possession and lost his lien, and that his subse-
quently receiving the plates again would not revive it. The
defendant requested the court to rule that a permissive use of
the plates by Carlton, in the place of business jointly occupied
by him and the defendant, was not such parting with the pos-
session as would divest the defendant's lien, if the defendant did
not allow them to go into the plaintiffs' possession or control,
and afterwards received them from Carlton, and made further
alterations and repairs on them. But the court instructed the
jury, that if the defendant voluntarily parted with the posses-
sion to the plaintiffs or their agent, he lost his lien and could not
reassert it.

As to the tender, the defendant asked the court to rule, that a
mere readiness to pay, unaccompanied with a tender of the
money, would not dissolve the defendant's lien, if he had any.
But the court instructed the jury upon this point, that " a mere
readiness to pay a legal and good demand would be insufficient;
but if the plaintiff expressed a willingness to pay any fair
and proper bill of the defendants, and said he had the money
wherewith to pay it, and really had it present, and offered it,
and the defendant refused to deliver the plates unless a further
bill for repairs and alterations was also paid, and the readi-
ness to pay was not acceded to for that reason, and the jury
found that the bill for repairs was not due, then the defendant
could not object that a legal tender for the amount due on the
bill for printing was not made."

It appeared that the plates were of very trifling value except to
the plaintiffs, but of great value to them, and that they had been
obliged to replace them at considerable expense. The defend-
ant contended that in this form of action the rule of damages

was the market value of the articles. But the court ruled, that the plaintiffs might show the fair value of the articles to themselves, and, as bearing on the question of value, the cost of replacing them, and that the fair worth of the articles to the plaintiffs would be the measure of damages.

It appeared that after the plaintiffs' demand upon the defendant, and before the bringing of this action, the plates were attached on a writ sued out by the defendant against the plaintiffs on said bills; whereupon the plaintiffs tendered payment for the printing, and that action was discontinued, " and the officer undertook to restore the property to the plaintiffs, who refused to receive it, and in some way it came back to the officer, in whose hands at the time of the trial it still remained." The court ruled that the damages would not be affected by the attachment and the alleged return, " if the plates were rightly not accepted by the plaintiffs."

The jury returned a verdict for the plaintiffs, and the defendant alleged exceptions.

*R. F. Fuller*, for the defendant.

*O. Stevens*, for the plaintiffs.

METCALF, J. The court are of opinion that no error in the trial of this cause is shown by these exceptions.

1. The judge rightly instructed the jury that if the agreement of the parties was, that the defendant, for the sake of doing the printing for the plaintiffs, should do it for a certain sum, and should also make alterations in the plates, without charge, in consideration of doing the printing for an indefinite time, and if the parties acted on this agreement for several years, and then gave it up, and thereupon the plaintiffs demanded the plates, then the defendant had no right to withhold them; and that the jury might presume that the continuance of the agreement had remunerated the defendant for making alterations in the plates. The effect of this instruction was, that a mechanic has no lien on property for labor done on it, when he agrees to do that labor in consideration of being employed and paid by the owner of the property to do other labor for him; such agreement is inconsistent with a right of lien, or is a waiver of it;

and a jury may rightly presume that the pay received for the other agreed labor is a remuneration for that which is done on the property; it is what he agrees to take, whether a remuneration or not.

2. There can be no doubt of the correctness of the ruling, that if the defendant voluntarily parted with the possession of the plates to the plaintiffs or their agent, he lost his lien and could not reassert it. Smith's Merc. Law, (5th ed.) 540. This ruling was made on the hypothesis that the defendant once had a lien.

3. Taking the whole of the next ruling together, it is manifestly right; being thus: If the jury find that the defendant's bill for repairs of the plates was not due, and that he refused to deliver them to the plaintiffs, on their demand, unless they would pay that bill, then they were not bound to tender payment of the bill which they owed him for printing, if they were ready to pay it on his giving up the plates. *Adams* v. *Clark*, 9 Cush. 215. This ruling was made on the hypothesis that the defendant had a lien on the plates for his bill for printing.

4. The proper rule of damages was prescribed by the judge, namely, the fair value of the plates to the plaintiffs. And he allowed the jury to take into consideration, in estimating that value, the cost of replacing the plates. The defendant insists that the market value was the true rule of damages. And this is doubtless the general rule in trover. But this rule presupposes the conversion of marketable property. Whereas, in this case, it was admitted by the defendant's counsel, in argument, that the plates in question were made for the printing of labels or advertisements in the plaintiffs' names, which were to be used by them only, in their special business; and the exceptions show that it was in evidence that they were of very trifling value, except to the plaintiffs. Such things cannot with any propriety be said to have a market value. And the actual value to him who owns and uses them is the just rule of damages in an action against him who converts them to his own use. *Suydam* v. *Jenkins*, 3 Sandf. 621, 622.

There is no ground for the defendant's objection, that damage to the amount of the value of the plates to the plaintiffs alone

was special damage, and therefore not recoverable, because not alleged in their declaration. Special damage, in trover, is that which the plaintiff sustains beyond the mere loss of his property by its conversion. *Davis* v. *Oswell*, 7 Car. & P. 804. *Bodley* v. *Reynolds*, 8 Ad. & El. N. R. 779. If the plaintiffs, in this case, had offered evidence that by the loss of their plates their business was obstructed, it would not have been admissible, under their declaration, for the purpose of proving damage beyond the value of the plates. Mayne on Damages, 212.

5. The court, we think, correctly ruled that the attachment and return of the plates did not affect the question of damages.

*Exceptions overruled.*